**Marilyn G. ICAZA, Plaintiff,**

v.

**George P. SHULTZ, et al., Defendants.**

**Civ. A. No. 86–1750.**

United States District Court, District of Columbia.

Feb. 19, 1987.

David Carliner, Washington, D.C., and Dan P. Danilov, Seattle, Wash., for plaintiff.

Wilma A. Lewis, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

This suit involves plaintiff's request for a declaration of United States citizenship pursuant to 28 U.S.C. § 2201 (1977). Plaintiff primarily contends that the United States government failed to advise her of statutory changes in immigration law which may have enabled her to retain permanently her U.S. citizenship. In response, defendants assert that plaintiff's claims are barred by the applicable statute of limitations. Alternatively, defendants argue that plaintiff's unawareness of a statutory amendment is no defense to her failure to follow the law as the government has no affirmative duty to advise plaintiff personally of developments in nationality laws.

## II. BACKGROUND

Both parties concede the salient facts in this case. Plaintiff Marilyn Icaza was born on July 31, 1947, in the Republic of Panama to a Panamanian father and a U.S. citizen mother. Plaintiff acquired citizenship at birth under section 201(g) of the Nationality Act of 1940, as she was a person born abroad to one U.S. citizen parent and one alien parent. An individual gaining citizenship under the provisions of that law, however, could retain that citizenship permanently only if he or she were physically present in the United States for a continuous period of five years between the ages of 13 and 21. Congress subsequently modified these "retention requirements" by demanding physical presence in the United States for a continuous period of five years between the ages of 14 and 28. *See* § 301(b) of the Immigration and Nationality Act ("INA") of 1952. Under the 1952 Act, therefore, an individual must have commenced compliance with the retention requirements by his or her 23rd birthday in order to retain permanently the U.S. citizenship status acquired at birth.

On October 2, 1964, plaintiff, at the age of 17, registered as a U.S. citizen at the U.S. Embassy in Panama and received a passport valid until January 1, 1965. *See* Defendants' Exhibits 1 & 2. At the time this passport was issued, plaintiff apparently was not told of the retention requirements discussed above. The State Department's Passport Office in Washington, D.C., later extended the expiration date of this passport until October 1, 1967.

On October 28, 1969, plaintiff applied for and received another U.S. passport valid to July 30, 1970, the day before her 23rd birthday. At that time, plaintiff was informed of the INA retention requirements which necessitated that she reside within the United States continuously for at least five years before her 28th birthday. *See* Defendants' Exhibit 1; Plaintiff's Answers to Interrogatories, Nos. 17 & 18 [hereinafter "Plaintiff's Answers, No."]. Plaintiff did not take up residence in the United

States prior to her 23rd birthday on July 31, 1970.[1]

After her 23rd birthday had passed, plaintiff applied to the Immigration and Naturalization Service ("INS") for a certificate of U.S. citizenship. A hearing was held on this application on January 22, 1971, however, a final decision was delayed pending the outcome of a Supreme Court case concerning the constitutionality of the retention requirements in section 301(b) of the Immigration and Nationality Act. *See Rogers v. Bellei,* 401 U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971). The Supreme Court, in *Bellei,* upheld the constitutionality of section 301(b). Subsequently, the INS issued a decision on June 23, 1971, denying plaintiff's application on the ground that plaintiff lost her citizenship by failing to meet the retention requirements of either section 201(g) of the Nationality Act of 1940 or section 301(b) of the INA of 1952. *See* Defendants' Exhibit 5.

On October 27, 1972, Congress amended the retention requirements of section 301(b) by reducing the requisite time period for continuous physical presence in the United States from five years to two years. *See* 8 U.S.C. § 1401(b)(1). This amendment applied retroactively to individuals, such as plaintiff, who were born abroad after May 24, 1934. 8 U.S.C. § 1401(c). Theoretically, plaintiff would have been able to begin compliance with the new residency requirements for a period of nine months between October 27, 1972, and July 30, 1973, the day before her 26th birthday.

Several years later, on March 29, 1979, Senator Thomas Eagleton of Missouri made an inquiry, at the request of plaintiff's mother, concerning the loss of plaintiff's citizenship status. *See* Defendants' Exhibit 7. By letter dated May 15, 1979, the INS informed Senator Eagleton of the events which resulted in plaintiff's loss of U.S. citizenship, namely, that plaintiff had failed to fulfill the statutory residency requirements for permanent citizenship status. *See* Defendants' Exhibit 8.

On October 15, 1979, plaintiff, at the age of 32 years, applied for a U.S. passport. *See* Defendants' Exhibit 9; Plaintiff's Answers, Nos. 30 & 31. According to defendants, this application was denied on the ground that plaintiff had lost her claim to U.S. citizenship. On March 14, 1984, plaintiff again applied for a U.S. passport. *See* Defendants' Exhibit 10. Plaintiff's application was again denied on the ground that plaintiff had lost her claim to U.S. citizenship on her 26th birthday, July 31, 1973.[2] INS issued an immigrant visa to plaintiff on August 13, 1984, in response to a petition by plaintiff's mother. *See* Defendants' Exhibit 11.

On February 26, 1986, plaintiff filed the instant complaint in the U.S. District Court for the Western District of Washington, seeking a declaration that she is a citizen of the United States. The action was transferred to this Court by order dated May 30, 1986.

## III. DISCUSSION

### A. *Statute of Limitations*

Plaintiff brought the instant action under the Declaratory Judgment Act, as amended, 28 U.S.C. § 2201.[3] Defendants correct-

---

**1.** From 1970 to 1979, plaintiff worked for the Panama Canal Company, a U.S. government agency. From 1979 to 1980, she worked for the U.S. Army. Since 1980, plaintiff has performed the duties of a clerk-typist and a Marine Traffic Clerk for the Panama Canal Commission. *See* Plaintiff's Answers, No. 20. As was noted by counsel at oral argument, plaintiff's residence within the U.S. Canal Zone is immaterial for purposes of fulfilling the retention requirements. *See* 8 U.S.C. § 1101(a)(38) (geographical term "United States" means continental United States, Alaska, Hawaii, Puerto Rico, Guam and the Virgin Islands).

**2.** Later, in November of 1984, Mr. Donald Wallace, Chief of the Inter-American Division, INS, wrote to plaintiff explaining the sequence of events leading to plaintiff's loss of citizenship. *See* Defendants' Exhibit 6.

**3.** 28 U.S.C. § 2201(a) provides, in relevant part: In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration will have the force and effect of a final judgment or decree and shall be reviewable as such.

ly note, however, that the statutory provision which specifically addresses the type of relief requested by plaintiff in this case is contained in 8 U.S.C. § 1503 (1978).[4] That statute enables an individual claiming a denial of a right to U.S. citizenship to bring an action for declaratory judgment under 28 U.S.C. § 2201(a).[5] Individuals desiring a declaration of citizenship, however, are required under § 1503(a) to bring an action seeking such declaratory relief "within five years after the final administrative denial of such right or privilege."

The pivotal matter, therefore, is a determination of the date upon which plaintiff's denial of citizenship was final. Defendants assert that the applicable date is October 15, 1979, when plaintiff's application for a passport was rejected. As defendants note, a denial of a passport application has been held to constitute a "final administrative denial" for purposes of determining whether a claim is time-barred under section 1503(a). *Whitehead v. Haig,* 794 F.2d 115, 119 (3d Cir.1986); *see also Chin Chuck Ming v. Dulles,* 225 F.2d 849, 853 (9th Cir.1955). Plaintiff claims, on the other hand, that the relevant date is March 14, 1984, when her application for a U.S. passport was again denied. Given a five year limitations period, the significance of this disagreement is obvious: this action is time-barred should the 1979 date apply, but the action may proceed should the 1984 date apply.

■ This Court adopts the government's position on this issue and finds that the declaratory relief sought by plaintiff is time-barred. Plaintiff asserts that the 1979 passport denial "was superseded by" the 1984 passport denial. Moreover, plaintiff adds that nothing on the face of the 1979 passport application indicates that an INS denial occurred. *See* Defendants' Exhibit 9. However, nothing on the face of the 1984 passport application indicates a denial either, therefore, this fact alone is not controlling.[6] *See* Defendants' Exhibit 10. Moreover, plaintiff has admitted that her passport indeed was denied in 1979. *See* Plaintiff's Answers, No. 21.

Clearly, the INS decision of June 23, 1971, was an administrative denial of plaintiff's claim of U.S. citizenship at that time. The Court notes that no action for declaratory relief was taken by plaintiff regarding this denial. Long after the five year statute of limitations under section 1503(a) had run, plaintiff applied in 1979 for a U.S. passport. Even if the Court found that the 1971 decision was not "final," there is little sense in finding that plaintiff's 1984 passport denial was "more final" than her 1979 passport denial. Under plaintiff's theory, an individual could indefinitely prolong the period in which a declaratory judgment ac-

---

28 U.S.C. § 2201(a) (1986 Supp.).

**4.** This Court must determine the applicable limitations period by ascertaining "the basic nature of the suit in which the issues involved would have been litigated if the Declaratory Judgment Act had not been adopted." *Romer v. Leary,* 425 F.2d 186, 188 (2d Cir.1970). Thus, the Court is led to 8 U.S.C. § 1503(a) which provides the substantive basis for a declaration of nationality from this Court.

**5.** In relevant part, § 1503(a) states:
(a) Proceedings for declaration of United States nationality. If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28, United States Code [28 USCS

§ 2201], against the head of such department or independent agency for a judgment declaring him to be a national of the United States,.... *An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege....*
8 U.S.C. § 1503(a) (emphasis added).
Although § 1503(a) refers to a person "within the United States," the Supreme Court has extended the benefit of the § 1503(a) declaratory judgment procedure to persons outside of the United States as well. *See Rusk v. Cort,* 369 U.S. 367, 379, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962) (person residing outside of the U.S. who has been denied a right of citizenship may seek declaratory relief under § 1503(a) notwithstanding that the provision refers to persons within the U.S.).

**6.** In comparison, plaintiff's 1969 passport application does contain a notation regarding its disposition, *i.e.,* that a passport was issued. *See* Defendants' Exhibit 3.

tion may be brought by simply continuing to file applications for passports.

Moreover, the facts of the case indicate plaintiff understood that her passport application had been rejected in 1979 and understood the reason for this denial. In her answers to defendants' interrogatories, plaintiff stated that "[i]n 1979, I applied for a passport again.... [but I was told that] I wasn't entitled to a Passport, as I failed to comply with the 5 years retention requirements." Plaintiff's Answers, No. 21. Indeed, the fact that INS rejected her passport application in 1979 is evidenced by the simple fact that she again applied for a passport in 1984.

In sum, plaintiff failed to bring an action for declaratory relief within the requisite period of time, five years, starting from *either* the time of the first formal INS denial of her citizenship in 1971 *or* from the denial of her passport application in 1979. It is illogical to commence the running of the limitations period from the time of the latest in a series of passport applications. Were this done, the limitations period established by Congress in section 1503(a) would be empty of meaning.

Although the Court finds that this action is time-barred, the Court will address the merits of plaintiff's claim that she should have been personally notified by the U.S. government of changes in the immigration laws.

### B. *Unawareness of Change in Retention Requirements*

■ Plaintiff urges that the U.S. government should have informed her of her eligibility to retain citizenship in the nine month period between October 27, 1972, the date Congress changed the residency requirement to two years, and July 30, 1973, the day before plaintiff's 26th birthday. Moreover, plaintiff contends that she is entitled to a *de novo* trial on the question of entitlement to citizenship since the facts of the case are not set forth sufficiently for disposition by summary judgment. Upon review

of plaintiff's argument, the Court finds that the government was under no duty to inform plaintiff of the 1972 amendment which retroactively shortened the residency requirement from five to two years. In open court, counsel for plaintiff confirmed that no dispute of material fact exists between the parties. As the "duty to inform" issue is a purely legal question involving undisputed facts, summary judgment is not precluded. *See Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Greenberg v. Food and Drug Administration,* 803 F.2d 1213, 1215–16 (D.C.Cir.1986).

Plaintiff was bestowed with citizenship at birth subject to certain statutory conditions and qualifications. This is due to the fact that she was born abroad, of one alien and one U.S. citizen parent. Her claim to citizenship is "wholly, and only, statutory." *Rogers v. Bellei,* 401 U.S. 815, 833, 91 S.Ct. 1060, 1070, 28 L.Ed.2d 499 (1971). As the Supreme Court made clear in *Bellei,* the statutorily conferred citizenship granted to plaintiff is not protected to the same degree as "Fourteenth Amendment citizenship," *i.e.,* that granted to "persons born or naturalized in the United States." *Bellei, supra,* at 834–35, 91 S.Ct. at 1070–1071. Thus, unlike "statutory citizenship," the native American's citizenship may not be taken away without his assent. *Id.* Plaintiff's claim to citizenship is the product of congressional generosity:

> Our National Legislature indulged the foreign-born child with presumptive citizenship, subject to subsequent satisfaction of a reasonable residence requirement, rather than to deny him citizenship outright, as concededly it had the power to do, and relegate the child, if he desired American citizenship, to the more arduous requirements of the usual naturalization process.

*Id.* at 835, 91 S.Ct. at 1071.[7]

In *Bellei,* the Supreme Court upheld the constitutionality of imposing a five-year

---

7. The Supreme Court further noted:
   The proper emphasis is on what the statute permits him to gain from the possible starting point of noncitizenship, not on what he claims to lose from the possible starting point

residency requirement for citizenship on persons who do not fall within the Fourteenth Amendment's definition of citizens. Subsequent to *Bellei*, numerous cases have held further that the U.S. government had no affirmative duty to inform individuals residing abroad of changes in nationality laws. *See Rucker v. Saxbe*, 552 F.2d 998, 1004 (3d Cir.) (U.S. government has no affirmative duty to inform citizens residing abroad of changes in nationality laws on continuing basis), *cert. denied*, 434 U.S. 919, 98 S.Ct. 392, 54 L.Ed.2d 275 (1977); *Paul v. Smith*, 784 F.2d 564, 565–66 (4th Cir.1986) (border officials had no duty to render advice to plaintiff regarding citizenship residency requirements, thus, government not estopped from denying citizenship to plaintiff for failure to meet those requirements); *INS v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (government's failure to publicize right of certain soldiers to become naturalized citizens did not estop government from enforcing statutory deadline for naturalization petitions).

In the instant action, plaintiff knew of the five-year residency requirement in 1969 when she applied for a passport. This passport was valid until the eve of her 23rd birthday since, after that date, she would be unable to begin fulfilling the five-year requirement of continuous presence within the United States before the age of 28. It is unfortunate that plaintiff missed her chance to begin residing in the U.S. in the nine month "window" between the date Congress changed the laws and plaintiff's 26th birth date. Nevertheless, plaintiff is bound by the conditions of the "statutory citizenship" she acquired at birth. The government was under no affirmative duty to advise plaintiff, residing abroad, of her second opportunity to gain permanent citizenship status. The Court could not find, nor could the plaintiff offer, any case to support plaintiff's position that the U.S. government has such a "duty to inform" persons abroad of citizenship residency requirements, or changes thereto. Finally, since plaintiff had known of the five-year

residency requirement and chose not to fulfill it, this Court can only conjecture as to whether plaintiff would have moved to the United States had she known of the new two-year residency requirement.

## IV. CONCLUSION

The Court denies plaintiff's request for declaratory relief as the instant action is time-barred under the applicable five-year statute of limitations. Alternatively, the Court finds that plaintiff cannot be excused from satisfying the applicable retention requirements for statutorily conferred citizenship based upon a claimed unawareness of those requirements. The U.S. government was under no affirmative duty to inform plaintiff personally of a change in nationality laws.

For the reasons discussed above, and upon review of the entire record herein, the Court grants defendants' motion for summary judgment.

---

of full citizenship to which he has no constitutional right in the first place.

*Bellei*, 401 U.S. at 836, 91 S.Ct. at 1071.