# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40944

United States Court of Appeals
Fifth Circuit

**FILED**

June 7, 2019

Lyle W. Cayce
Clerk

DOLORES MARGARITA GONZALEZ,

Plaintiff - Appellant

v.

NORMA A. LIMON, Harlingen Field Office Director, Citizenship and Immigration; UNITED STATES OF AMERICA,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The United States Citizenship and Immigration Service (USCIS) denied Dolores Margarita Gonzalez a certificate of citizenship, first in 2008, then again in 2016. Gonzalez challenged only the agency's 2016 denial. The Government argues Gonzalez's challenge is untimely, that the relevant five-year limitations period runs from the first of her denials. Finding Gonzalez's action untimely, we affirm the district court's dismissal of her claim.

I.

Gonzalez was born in 1962 in Tamaulipas, Mexico to an American father and a Mexican mother. Her parents were not married at the time, but entered

No. 17-40944

a putative marriage in 1972. In 1983, Gonzalez filed an application for a certificate of citizenship with the Immigration and Naturalization Service (INS). In 1984, INS determined that Gonzalez was legitimated when her parents were married, and that she thereby acquired United States citizenship through her father. The agency issued Gonzalez a certificate of citizenship.

In 1991, however, INS notified Gonzalez it intended to cancel the certificate of citizenship issued seven years earlier. In the intervening years, INS had discovered that Gonzalez's father "had an unterminated marriage when he married [her] mother . . . rendering the [latter] marriage . . . invalid," such that Gonzalez was not legitimated. The agency provided an opportunity for Gonzalez to rebut the finding, but she did not respond. Gonzalez claims she never received the 1991 letter.

No action was taken for fifteen years. Then, in 2006, INS's successor agency, USCIS, issued an order for the surrender and cancellation of Gonzalez's certificate of citizenship. Gonzalez surrendered her certificate and immediately filed a motion for reconsideration with the agency. In this motion, Gonzalez argued the cancellation was procedurally defective: she had not received INS's 1991 letter and therefore was denied an opportunity to contest its findings. She also argued she had been properly legitimated under the applicable Mexican law as the child of parents who entered a putative marriage in good faith. On September 2, 2008, USCIS determined that its cancellation decision was proper, and dismissed Gonzalez's motion (the "2008 Denial"). Gonzalez did not pursue an administrative appeal.

On May 28, 2014, Gonzalez filed a new motion with USCIS, advancing a new basis for the reconsideration of USCIS's decision, namely that she had been legitimated by her father's sworn acknowledgement of paternity. Gonzalez attached evidence in support of this argument: Social Security records indicating the receipt of benefits as her father's recognized daughter

and a copy of a certificate of United States citizenship issued to her sister in 2013. On November 14, 2014, USCIS determined that Gonzalez's evidence failed to establish that she had been legitimated, and dismissed the motion. Gonzalez pursued an administrative appeal, and on January 29, 2016, the Administrative Appeals Office affirmed the agency's refusal to reopen her case ("the 2016 Denial").

On April 5, 2017, Gonzalez filed the instant action against the USCIS Harlingen Field Office Director as well as the United States (collectively "the Government") in the Southern District of Texas. Gonzalez alleged that, by cancelling her certificate of citizenship and refusing to reconsider that decision, USCIS unlawfully denied her a right or privilege claimed as a national of the United States. She sought a declaration of her citizenship under 8 U.S.C. § 1503(a), as well as an injunction "enjoining [USCIS] from not re-issuing" her certificate of citizenship.

The Government moved to dismiss the action for lack of subject-matter jurisdiction, arguing the suit was barred by Section 1503(a)'s limitations provision because Gonzalez failed to bring her claim within five years of the 2008 Denial—the 2016 Denial did not restart the limitations clock. In addition, Gonzalez failed to exhaust administrative remedies with respect to the 2008 Denial.

The district court granted the Government's motion and dismissed Gonzalez's action for lack of jurisdiction. Finding the text of the statute "silent on whether the statute of limitation commences after the first or the most recent final administrative denial," the district court held that Section 1503(a) includes an implicit limitation to the initial administrative denial. In the absence of such a limitation, Gonzalez could restart the limitations period by prompting duplicative denials—the "five-year requirement [would be] meaningless." The initial denial was the 2008 Denial, "[t]hus the five-year

No. 17-40944

statute of limitations period commenced in 2008, and expired in 2013." The 2016 Denial did "not modify the expiration of the five-year statute of limitations." Additionally, the district court held that Gonzalez failed to exhaust administrative remedies with respect to the 2008 Denial. This appeal followed.[1]

## II.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."[2] We review jurisdictional issues de novo.[3] The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."[4] The court asks whether the plaintiff has carried her burden "to allege a plausible set of facts establishing jurisdiction."[5]

We must consider whether there is jurisdiction over Gonzalez's claim. Gonzalez alleges that under Section 1503(a), she is entitled to a declaration of United States citizenship to remedy USCIS's unlawful denial of a right or privilege claimed as a United States national. Her claim raises a question of federal law,[6] however, an action brought under Section 1503(a) must comply with further jurisdictional requirements. Specifically, it "may be instituted

---

[1] Gonzalez mentions that while this case was pending, she filed a new action, also in the Southern District of Texas, "challenging the recent denial of her application for a U.S. passport" under the Administrative Procedure Act.

[2] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (citations omitted).

[3] *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

[4] *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001).

[5] *Physician Hosps. of Am.*, 691 F.3d at 652.

[6] 28 U.S.C. § 1331 (2012).

only within five years after the final administrative denial of such right or privilege."[7]

The Government does not dispute that, formally, Gonzalez seeks a declaration of nationality in connection with the 2016 Denial. Indeed, the complaint alleges Gonzalez "has been denied a right or privilege claimed as a national of the United States . . . by virtue of the decision of the Harlingen Field Office Director cancelling her Certificate of Citizenship, and refusal to reconsider that decision. This became a final agency action on January 29, 2016, when the AAO affirmed that decision." Although it mentions both a "cancell[ation]" and a "refusal to reconsider," the complaint is directed at the 2016 Denial, with respect to which the parties agree Gonzalez exhausted administrative remedies. The only dispute is whether Section 1503(a) permits Gonzalez to seek a declaration in connection with the 2016 Denial given USCIS's prior denial in 2008.

The Government argues we cannot interpret Section 1503(a) to allow plaintiffs to "restart the clock" by means of a follow-on denial. The Government argues that the Third, Seventh, and Eleventh Circuits, and more than one district court have held that claims like Gonzalez's are barred.[8] *Henry v. Quarantillo*[9] comprehensively encapsulates the reasoning in these decisions. Leroy Henry filed a N-600 application for citizenship, claiming citizenship derived from his father's naturalization; this application was denied in 1999.[10] In 2007, Henry filed a second N-600 application, making the same claim for

---

[7] 8 U.S.C. § 1503(a). Additionally, a plaintiff must exhaust administrative remedies. *Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 397 n.4 (5th Cir. 2007).

[8] *See Heuer v. U.S. Sec'y of State*, 20 F.3d 424, 426–27 (11th Cir. 1994) (per curiam); *Bensky v. Powell*, 391 F.3d 894, 897–98 (7th Cir. 2004); *Whitehead v. Haig*, 794 F.2d 115, 119–20 (3d Cir. 1986); *Icaza v. Shultz*, 656 F. Supp. 819, 821–23 (D.D.C. 1987).

[9] 684 F. Supp. 2d 298 (E.D.N.Y. 2010).

[10] *Id*. at 300.

citizenship, but attaching new evidence; USCIS denied this application too.[11] When in 2008 Henry filed a declaratory action under Section 1503(a), the court found it untimely: Section 1503(a)'s reference to "the final administrative denial" referred to the earliest of the denials.[12] While, "[s]tanding alone, [the statute] might appear to indicate that *any* 'final administrative denial,' irrespective of whether another denial has occurred before it, counts,"[13] such an approach would allow "an individual . . . indefinitely [to] prolong the period . . . by continuing to file applications."[14] "[T]he limitations period established by Congress in section . . . 1503(a) would be empty of meaning."[15] Henry's inclusion of new evidence with his second N-600 application made no difference, because this evidence did not render the second process in any way "qualitatively different" from the first.[16] *Henry* read Section 1503(a)'s reference to "'the final administrative denial' to mean 'the *first* final administrative denial.'"[17] The concern in this line of cases is the want of finality attending tolerance of repetitious challenges following duplicative denials. The Government argues this case is in all relevant parts identical to *Henry*.

Gonzalez, on the other hand, would have us resolve this case on the plain meaning of the statutory text, construed liberally as a remedial statute.[18] She points out that the statute includes no reference to a first or follow-on

---

[11] *Id*. at 301.

[12] *Id*. at 307–08.

[13] *Id*. at 306.

[14] *Id*. at 307 (quoting *Icaza*, 656 F. Supp. at 822–23).

[15] *Id*. (quoting *Icaza*, 656 F. Supp. at 823).

[16] *Id*.

[17] *Id*. (emphasis added).

[18] Gonzalez also argues that, because she did not exhaust administrative remedies in 2008, there was no cause of action and so no limitation period ran at all. This argument is premised on the unsupported assumption that Section 1503's limitations period only applies where the plaintiff has developed a cause of action challenging the "final administrative denial."

decision—only "the final administrative denial" from which the plaintiff's action arises. Section 1503(a)'s first sentence authorizes the district court to adjudicate a claim by "any person who is within the United States" where the plaintiff "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States."[19] Its last sentence provides that "[a]n action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege."[20] Gonzalez in effect contends that, in setting a limitations period, Congress had no concern with the finality of administrative decisions and with foreclosing opportunistic pleading via duplicative denials.

We cannot agree with Gonzalez's reading of the statute. While the text is silent regarding duplicative denials, in defining a limitations period, Congress expressed its interest in finality. Implicitly authorizing a series of duplicative claims would frustrate that interest. Section 1503(a)'s reference to "the final administrative denial" means the first final administrative denial.

III.

AFFIRMED.

---

[19] 8 U.S.C. § 1503(a).
[20] *Id.*