# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2021

Lyle W. Cayce
Clerk

———————

No. 20-50399

———————

David Jonaton Cambranis,

*Plaintiff—Appellant*,

*versus*

Antony Blinken, *Secretary, U.S. Department of State*; Attorney General of the United States,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-238

———————————————————

Before Stewart, Higginson, and Wilson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Appellant David Cambranis appeals the district court's dismissal of his amended complaint for lack of subject-matter jurisdiction. We AFFIRM.

## I. Background

According to his amended complaint, Cambranis was born on January 4, 1979, in Del Rio, Texas, when his mother went into labor while attending a colleague's birthday party. His mother, Eva Lopez Escobar, is a Mexican citizen who was living at the time in Ciudad Acuña, Coahuila, Mexico.

No. 20-50399

Cambranis alleges that on January 22, 1979, his mother registered his birth in Mexico and wrongly reported that he was born in Ciudad Acuña. On July 27, 1981, Ms. Escobar filed a delayed birth certificate for Cambranis with the Texas Department of Health, Bureau of Vital Statistics, recording that he was born in Texas. The Texas birth certificate included an attestation from a witness who claimed to have attended Cambranis's birth in Del Rio.

More recently, Cambranis has filed six passport applications with the United States Department of State ("DOS"), based on his purported status as a national of the United States. Each has been denied. In its denial letters, DOS describes that Cambranis has not met his burden to prove his U.S. citizenship or nationality and notes the existence of the Mexican birth record as contradicting his claim of having been born in the United States. Cambranis filed his first application on May 15, 2009, which was denied on September 22, 2010. His most recent application was filed on March 17, 2017 and was denied on December 6, 2018.

On March 11, 2019, Cambranis filed his initial complaint in this case, which challenged DOS's denial of his passport applications and sought a declaration of U.S. citizenship pursuant to 8 U.S.C. § 1503(a).[1]

The Government moved to dismiss the complaint for lack of subject-matter jurisdiction. The Government argued that the five-year statute of

---

[1] Section 1503(a) states, in relevant part: "If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action" under 28 U.S.C. § 2201 "for a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a). The text of the statute further describes that an action under § 1503(a) is not available in connection with any removal proceeding and, important to this case, that an appropriate action must be brought "within five years after the final administrative denial" of the relevant right or privilege. *Id.*

limitations for Cambranis's § 1503(a) claim had expired because it began to run upon the denial of Cambranis's first passport application on September 22, 2010. In support, the Government cited this court's decision in *Gonzalez v. Limon*, which held that the statute of limitations in § 1503(a) begins to run from the *first* final administrative denial of a right, notwithstanding subsequent administrative denials of the same right. 926 F.3d 186, 189-90 (5th Cir. 2019). The Government attached to its motion the denial letters from DOS corresponding to each passport application.

In lieu of responding to the Government's motion, Cambranis filed his amended complaint, which is the subject of this appeal. In the amended complaint, Cambranis continues to assert a claim under § 1503(a), alleging that DOS "den[ied] him a United States passport on the ground that he is not a national of the United States." Although he maintains his § 1503(a) claim, Cambranis expressly acknowledges, in the amended complaint itself, that the claim is foreclosed by *Gonzalez* and that he includes the claim "to preserve the issue for appeal."

In addition to his § 1503(a) claim, the amended complaint adds two further causes of action: (1) a claim under the Administrative Procedure Act ("APA") for judicial review pursuant to 5 U.S.C. §§ 701-706, asserting that DOS's decision to deny him a passport was arbitrary and capricious; and (2) a Fifth Amendment claim, asserting the denial of the rights and privileges of citizenship as guaranteed by the Fourteenth Amendment, including the right to travel internationally. All three claims—the § 1503(a) claim, the statutory APA claim, and the constitutional claim—seek a declaration that Cambranis is a U.S. citizen.

Again, the Government moved to dismiss the amended complaint for lack of subject-matter jurisdiction. The Government reasserted that the § 1503(a) claim is barred by the statute of limitations, and also argued that

the statutory APA claim is barred by 5 U.S.C. § 704 because § 1503(a) is an "other adequate remedy" for the challenged agency action.[2] The Government further sought to dismiss Cambranis's constitutional claim on the ground that it had not waived its sovereign immunity pursuant to 5 U.S.C. § 702.[3]

Cambranis filed an opposition to the motion to dismiss. Therein, he made two concessions.

First, as he had done in the amended complaint itself, he conceded that under *Gonzalez*, his § 1503(a) claim was barred by the statute of limitations. Although Cambranis stated that he "does not concede that *Gonzalez v. Limon* was correctly decided," he acknowledged that "this Court is bound by Fifth Circuit precedent and so all that [he] can do at this time is preserve the issue for appeal, that is that *Gonzalez v. Limon* was wrongly decided."

Second, he conceded that § 704 barred the district court's review of his statutory APA claim because this court held in *Flores v. Pompeo* that § 1503(a) provides an "adequate alternative remedy" to the APA for

---

[2] Section 704 of the APA states, in relevant part: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

[3] Section 702 of the APA states, in relevant part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S.C. § 702. As discussed below, § 702 further states that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

challenging the denial of a passport application. 936 F.3d 273, 277 (5th Cir. 2019). However, he maintained that *Flores* did not apply to his constitutional claim.

In short, Cambranis conceded in district court that the district court lacked subject-matter jurisdiction to consider his first two claims (his § 1503(a) claim and his statutory APA claim). That left only his constitutional claim, which he maintained that the district court had jurisdiction to consider.

The district court granted the Government's motion to dismiss in full. The district court agreed that *Gonzalez* and *Flores* foreclosed Cambranis's § 1503(a) and statutory APA claims, respectively. It then held that his remaining constitutional claim was also barred by § 704's "other adequate remedy" provision, extending the logic of *Flores* to apply to constitutional claims challenging the denial of a passport application. Because it concluded § 704 posed an independent jurisdictional bar to Cambranis's constitutional claim, the district court did not reach whether the Government retained its sovereign immunity via the operation of § 702.

Cambranis filed a timely notice of appeal.

## II. Standard of Review

This Court reviews questions of subject-matter jurisdiction, including whether the United States is entitled to sovereign immunity, de novo. *Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008); *Koehler v. United States*, 153 F.3d 263, 265, 267 (5th Cir. 1998).

## III. Discussion

Cambranis challenges only the district court's conclusion that it lacked subject-matter jurisdiction to consider his constitutional claim. He argues that, for purposes of his constitutional claim, the United States waived

its sovereign immunity via 5 U.S.C. § 702, and that—contrary to the district court's ruling—5 U.S.C. § 704 does not pose an independent jurisdictional bar. Although we affirm the district court, we do so because we hold that the United States has not waived its sovereign immunity under the terms of § 702. As a result, we do not reach whether § 704 serves as an independent jurisdictional bar to Cambranis's constitutional claim.

This case turns on the nature of—and the relationship between—two statutes: 5 U.S.C. § 702 and 8 U.S.C. § 1503(a).

Section 702 of the APA waives the United States' sovereign immunity for actions seeking non-monetary relief against federal government agencies. *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014).[4] The waiver applies both to statutory claims and to "non-statutory causes of action against federal agencies arising under 28 U.S.C. § 1331." *Id.* (citing *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982)). Cambranis thus relies on the sovereign immunity waiver contained in § 702 in order to bring his constitutional claim, seeking declaratory relief, against a department of the United States.

There are two requirements to establish waiver under § 702. "First, the plaintiff must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for judicial review." *Id.* at 489. "Second, the plaintiff must show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'" *Id.* (quoting *Lujan v. Nat'l*

---

[4] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).

*Wildlife Fed'n*, 497 U.S. 871, 883 (1990)). There is no dispute that Cambranis's constitutional claim satisfies these two requirements.

However, separate from these two affirmative requirements, § 702 also contains enumerated exceptions that limit the reach of its general waiver. Relevant here, § 702 states that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. According to the Supreme Court, "[t]hat provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). We will refer to this provision as the "any other statute" proviso.

The Supreme Court has described how to determine whether a particular statute triggers the "any other statute" proviso. As the Court stated in *Patchak*, "'when Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id.* at 216 (alteration in original) (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)). But "[w]hen a statute is not addressed to the type of grievance which the plaintiff seeks to assert, then the statute cannot prevent an APA suit." *Id.* (internal quotation marks and citation omitted).

Restated, there are three requirements for a separate statute to trigger the "any other statute" proviso of § 702: (1) the statute must address the same type of grievance the plaintiff asserts in his suit; (2) the statute must deal "in particularity" with the claim, and (3) Congress must have intended the statute to afford the "exclusive remedy" for that type of claim/grievance. *See id.*

The question here is whether § 1503(a) meets these requirements under the facts of this case.

Section 1503(a) permits a person "who is within the United States" to bring an action in federal district court for a judgment declaring him to be a U.S. national, if he has been denied a right or privilege of citizenship by any department or agency "upon the ground that he is not a national of the United States." 8 U.S.C. § 1503(a).[5] But the person must bring the declaratory action "within five years after the final administrative denial of such right or privilege," *id.*, otherwise the district court lacks subject-matter jurisdiction to hear the claim. *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019). This limitations period begins to run after the *first* final administrative denial of the claimed right or privilege, and the limitations period is not reset "by means of a follow-on denial." *Id.* at 189.[6]

Here, the Government argues that §1503(a) satisfies all three requirements of the "any other statute" proviso of § 702 and, because its statute of limitations has run, it expressly forbids the relief sought by Cambranis. Therefore, the Government contends that § 702 prevents Cambranis from evading the statute of limitations contained in § 1503(a) by bringing his action for declaratory relief in the form of a constitutional claim.

Cambranis has two main arguments in response.

---

[5] Section 1503(b)-(c) sets out separate procedures for persons who are "not within" the United States, none of which is applicable here.

[6] There is no dispute that DOS's denials of Cambranis's passport applications constitute "final" agency actions. Two conditions must generally be met for agency action to be considered "final" under the APA: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (citation omitted).

First, he argues that § 1503(a) does not address the same type of grievance that he asserts in his suit—that § 1503(a) is actually inapplicable to the facts of this case. Specifically, he argues that § 1503(a) applies only when the Government denies a person a right or privilege of citizenship "upon the ground that he is not a national of the United States," 8 U.S.C. § 1503(a), and that this language does *not* include a circumstance where the Government denies a right or privilege because it finds merely that a claimant has not *proved* that he is a U.S. national. In other words, Cambranis claims that § 1503(a) only applies when the Government affirmatively determines that a claimant is not a U.S. national. Anything short of that—such as when the Government asserts only that a claimant has submitted insufficient proof of U.S. nationality—and § 1503(a) is inapplicable and a claimant cannot seek relief under its terms. Cambranis claims that is the case here: DOS's denial letters state that Cambranis's passport applications were rejected only because he submitted "insufficient proof" of his U.S. nationality.

Second, assuming *arguendo* that § 1503(a) is applicable, Cambranis argues that Congress did not intend § 1503(a) to be an "exclusive remedy" and thus it does not trigger the "any other statute" proviso of § 702.

Cambranis's first argument is easily dispensed with because he makes it for the first time on appeal. *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal."). Indeed, Cambranis argued the opposite below. He repeatedly insisted that he had a viable § 1503(a) claim that was barred by this court's precedent in *Gonzalez* pertaining to the statute of limitations. Moreover, despite being in possession of DOS's denial letters for almost three weeks prior to filing his amended complaint, he nevertheless specifically alleged in his amended complaint that DOS "den[ied] him a United States passport on the ground that he is not a national of the United States." We will not allow Cambranis to reverse

No. 20-50399

course on appeal. *Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (per curiam) ("On appeal, we will not allow Plaintiffs to adopt a position not taken in the district court 'merely because [they] believe[] that [they] might prevail if given the opportunity to try [the] case again on a different theory.'" (alterations in original) (quoting *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 822 (5th Cir. 1996))).[7]

Turning to his second argument, we must determine whether Congress intended § 1503(a) to be an "exclusive remedy" for the type of grievance it was designed to redress: where a person within the United States is denied a passport, or other right of citizenship, on the ground that he is not a national of the United States.

In *Block v. North Dakota ex rel. Board of University and School Lands*, the Supreme Court considered whether the Quiet Title Act ("QTA") was intended to be an exclusive remedy for purposes of § 702's "any other statute" proviso. 461 U.S. at 280-86. At issue was whether North Dakota, in a dispute with the United States over title to land, could avoid the statute of limitations contained in the QTA by bringing suit under a different cause of action. *Id.* at 280. The Court began by considering the legislative history surrounding the passage of the QTA, including the adoption of the statute of limitations. *Id.* at 284-85. In addition, the Court described that "the balance, completeness, and structural integrity of the [QTA] belie[s] the contention that it was designed merely to supplement other judicial relief" and that it would apply "the rule that a precisely drawn, detailed statute preempts more

---

[7] We take no position on the merits of Cambranis's argument, though we note that some courts have found this distinction to be salient. *See, e.g.*, *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 180 (E.D.N.Y. 2019) ("A passport revocation or denial based on a finding that an individual did not submit sufficient evidence to establish citizenship is not a revocation or denial based on a finding of non-citizenship, as is required to bring an action under 8 U.S.C. § 1503(a).").

general remedies." *Id.* at 285 (internal quotations marks and citation omitted). Of particular concern was rendering the statute of limitations and other restrictive provisions to be dead letter. The Court reasoned that "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Id.* (citation omitted). This echoes the well-established canon of statutory interpretation that courts should construe statutes to avoid rendering language and requirements to be surplusage. *See Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020).

We conclude that the Court's reasoning in *Block* applies with equal force to § 1503(a). Section 1503(a) is a precisely drawn, detailed statute that sets out a remedial scheme for persons within the United States who are denied a privilege of citizenship, which suggests Congress intended it to preempt more general remedies. To conclude otherwise and to permit individuals like Cambranis to seek the same relief for the same grievance provided for in § 1503(a) while sidestepping its statute of limitations would render that restriction a nullity.

Notwithstanding *Block*, Cambranis argues an earlier Supreme Court decision all but decided that § 1503(a) is *not* an exclusive remedy. In *Rusk v. Cort*, the Supreme Court held that subsections (b) and (c) of § 1503—the provisions that apply to persons "not within" the United States—are not exclusive remedies. 369 U.S. 367, 379 (1962), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Cambranis argues that the logic of *Rusk* encompasses § 1503(a) as well.

It does not. The Court in *Rusk* examined the legislative history of subsections (b) and (c) and concluded that the purpose of the two provisions was to cut off an abusive practice that had developed under a previous

immigration law in which aliens could gain "fraudulent entry to the United States by prosecuting spurious citizenship claims." *Id.* The Court thus concluded that "Congress did not intend to foreclose lawsuits by claimants . . . who do not try to gain entry to the United States before prevailing in their claims to citizenship." *Id.* That concern is irrelevant to § 1503(a), which addresses only persons who are already in the United States.

In addition, the Court in *Rusk* described that it was reluctant to hold that "the *broadly remedial provisions* of the Administrative Procedure Act are unavailable to review administrative decisions under the [Immigration and Nationality Act of 1952] in the absence of clear and convincing evidence that Congress so intended." *Id.* at 379-80 (emphasis added). But § 702 has been subsequently amended by Congress to expressly condition its waiver of sovereign immunity on the limitations contained in other statutes[8] and the Supreme Court has since acknowledged that *Rusk* incorrectly assumed that the APA constituted "an independent grant of subject-matter jurisdiction," when it in fact "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano*, 430 U.S. at 105, 107. Indeed, this court has already noted that "it is unclear to what degree that *Rusk* remains good law in light of *Califano*." *Hinojosa v. Horn*, 896 F.3d 305, 313 (5th Cir. 2018) (per curiam). To the extent we are bound by *Rusk*, it is only in what it expressly holds: that subsections (b) and (c) of § 1503 are not exclusive remedies.[9]

---

[8] "Section 702 acquired its current form in 1976." *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524 (9th Cir. 1989); *see also* H.R. Rep. No. 94-1656, 1976 WL 14066 at *3 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6121, 6123.

[9] The only remaining rationale supplied in *Rusk* that is arguably applicable to § 1503(a) is the use of permissive rather than mandatory language. *See Rusk*, 369 U.S. at 375. Section 1503(a) states that a person "*may* institute an action" for declaratory relief. 8 U.S.C. § 1503(a) (emphasis added). But the permissive use of "may" here means only that

No. 20-50399

Therefore, we hold that Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national. As a result, the "any other statute" proviso of § 702 maintains the United States' sovereign immunity against Cambranis's constitutional claim because the statute of limitations contained in § 1503(a) has run and thus expressly forbids the relief sought.

\*     \*     \*

For the foregoing reasons, we AFFIRM.

---

a person has the option of seeking declaratory relief, if he so chooses. We do not read the use of "may" to imply that a person is to select between § 1503(a) and different, unmentioned mechanisms of seeking declaratory relief for the same grievance.