# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 23, 2011

No. 10-40936

Lyle W. Cayce
Clerk

LEE BROWN; RICHARD BADON; BRUCE CRUTCHFIELD; ERIC LENA;
WATKINS JACKSON; TIMOTHY HARMON; RAYMOND JOHNSON;
MARK JOHNSON; DONALD WIGGINS; ROBERTO CANTU; RAYMOND
BALDERAS; MICHAEL AMSBARY; BRIAN BRADSHAW,

Plaintiffs - Appellants

v.

OFFSHORE SPECIALTY FABRICATORS, INC.; HORIZON OFFSHORE,
INC.; HORIZON OFFSHORE CONTRACTORS, INC.; O.W.I. LIMITED
(OCEANWIDE INTERNATIONAL); OCEANWIDE HOUSTON, INC.; CAL
DIVE INTERNATIONAL, INC.; C-MAR AMERICA, INC.; HUMARES BV;
OCEANWIDE OFFSHORE SERVICES; C-MAR GROUP HOLDINGS, LTD.;
C-MAR GROUP HOLDINGS, INC.; GLOBAL INDUSTRIES OFFSHORE,
L.L.C.; GLOBAL INDUSTRIES, LTD.; HORIZON VESSELS, INC.;
OFFSHORE EXPRESS, INC.; C-MAR SERVICES (UK) LIMITED; HELIX
ENERGY SOLUTIONS GROUP, INC.,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal involves a putative class action brought against several oil and gas companies and several companies that provide labor for offshore oil and gas projects. The plaintiffs allege violations of the Racketeer Influenced and Corrupt

No.  10-40936

Organizations Act (RICO) and the Outer Continental Shelf Lands Act (OCSLA). Under the OCSLA, the plaintiffs pursue both a personal right of action for economic damages and an enforcement action under the OCSLA's citizen suit provision for injunctive relief.  The district court disposed of all of the plaintiffs' claims over time, dismissing some and granting summary judgment against others.  The court then entered a final judgment dismissing all claims.  For the reasons that follow, the district court's judgment is AFFIRMED.

I.

The plaintiffs contend that the defendants maintain a hiring scheme to employ foreign workers on the Outer Continental Shelf, in violation of RICO and the OCSLA.  According to the plaintiffs, the defendants employ workers who are neither citizens nor workers authorized to be in the United States.  The plaintiffs argue that the defendants' conduct violates the Immigration and Nationality Act (INA), and therefore qualifies as racketeering activity prohibited by RICO. Although the OCSLA provides more specific rules for employing foreign workers on the Outer Continental Shelf—the OCSLA "manning requirements"—the plaintiffs contend that the defendants also violate these requirements.  The plaintiffs further assert that this unlawful hiring scheme results in depressed wages and degraded working conditions to the detriment of U.S. citizens and legal residents who work on the Outer Continental Shelf.

The initial complaint was filed on December 17, 2004.  Numerous amendments changed the claims and parties involved, but only three claims have survived for this appeal: (1) a RICO claim against the "Service

No.  10-40936

Defendants,"[1] (2) an OCSLA damages claim against all defendants, and (3) an OCSLA enforcement claim against all defendants.

On January 30, 2008, the district court dismissed the OCSLA damages claim upon the defendants' motion, holding that the statute does not create a private cause of action for damages.

On July 21, 2008, the district court ordered threshold discovery on the issues raised by the RICO claim, specifically on the applicability of the INA to the Service Defendants' conduct, the existence of exemptions to the OCSLA, and the standing and status of the named plaintiffs.  One year later, when threshold discovery concluded, the Service Defendants moved separately for summary judgment.  The district court granted summary judgment to the Service Defendants on the RICO claim for two reasons: (1) The laws of the United States, including the INA, extend only to installations and devices attached to the seabed of the Outer Continental Shelf.  Because the Service Defendants operate free-floating vessels they cannot have violated the INA and thus cannot have violated RICO.  (2) The Service Defendants possess Coast Guard-issued exemptions to the OCSLA manning requirements that allow them to lawfully employ foreign workers on the Outer Continental Shelf.  The plaintiffs failed to present evidence to undercut the validity of these exemptions.

The defendants then filed a joint motion to dismiss and, in the alternative, a joint motion for summary judgment on the OCSLA enforcement claim.  On August 17, 2010, the district court granted this motion, holding that the

---

[1] The "Service Defendants" are companies in the business of offshore oil and gas exploration.  The "Service Defendants" remaining in the suit are Cal Dive International, Inc.; Helix Energy Solutions, Inc.; Horizon Offshore Contractors, Inc.; Horizon Offshore, Inc.; Horizon Vessels, Inc.; Offshore Specialty Fabricators, Inc.; Offshore Express, Inc.; Global Industries Offshore, LLC; and Global Industries, Ltd.  All other remaining defendants are "Manning Defendants," companies in the business of providing contract labor services for oil and gas projects.  When referring to the "Service Defendants" and "Manning Defendants," collectively, this opinion uses the generic, "defendants."

3

No. 10-40936

plaintiffs had failed to comply with the OCSLA's pre-suit notification requirements, and that the plaintiffs lacked standing.  The court entered an appealable final judgment the same day, dismissing all claims.  The plaintiffs appeal.

## II.

We review summary judgments and dismissals for failure to state a claim de novo.  *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).  Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In reviewing a dismissal for failure to state a claim, "[w]e must accept the allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 699-700 (5th Cir. 2004).

## A.

## 1.

We begin by reviewing the district court's grant of summary judgment dismissing the plaintiffs' RICO claim.  The plaintiffs contend that the district court erred in granting summary judgment because, regardless of the free-floating character of the Service Defendants' vessels, the INA still applies to the Service Defendants' conduct.  In the plaintiffs' view, the INA is triggered when foreign workers step foot on U.S. soil before being taken to the Outer Continental Shelf, and remains effective even if those workers perform their work on a free-floating vessel.  The plaintiffs argue that the Service Defendants do not follow the strictures of the INA in employing foreign workers, and thus engage in racketeering activity under RICO.  *See* 18 U.S.C. § 1961(1)(F).

We disagree.  Violations of the INA can, of course, constitute racketeering activity prohibited by RICO.  *Id.*  The sections of the INA that qualify as racketeering activity, however, do not on their own terms include the Outer

No. 10-40936

Continental Shelf within their territorial reach. *See* 8 U.S.C. §§ 1101(a)(38), 1324, 1327, 1328 (prohibiting certain conduct within the United States and defining the United States as "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands."). United States law, including the INA, is made applicable to the Outer Continental Shelf through the OCSLA. 43 U.S.C. § 1333(a)(1). *See also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217-20 (1986) (defining the purpose of the OCSLA). The OCSLA provides:

> The Constitution and laws . . . of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

43 U.S.C. § 1333(a)(1). The plaintiffs concede that the Service Defendants' vessels are free floating, and are neither permanently nor temporarily attached to or erected on the seabed. The OCSLA does not, therefore, extend the reach of United States law, including the INA, to the Service Defendants' vessels. The plaintiffs cite no authority for their theory that the INA, once triggered by workers stepping foot on U.S. soil, remains effective forever, and we are unpersuaded by such argument. We hold that the Service Defendants do not violate RICO because the law that would make their conduct racketeering activity—the INA—does not apply in the place where that conduct occurred, namely vessels floating on the waters of the Outer Continental Shelf.

No. 10-40936

2.

The plaintiffs further contend that the exemptions the Service Defendants possess to the OCSLA manning requirements do not shield them from RICO liability because those exemptions were fraudulently obtained. We now consider that argument.[2]

The OCSLA manning requirements provide that vessels, rigs, platforms, and other structures operating on the Outer Continental Shelf must "be manned or crewed . . . by citizens of the United States or aliens lawfully admitted to the United States for permanent residence." 43 U.S.C. § 1356(a)(3). This requirement is subject to exemptions that the OCSLA empowers the United States Coast Guard to issue. 43 U.S.C. § 1356. The vessels exempt from the manning requirements include any vessel "over 50 percent of which is owned by citizens of a foreign nation or with respect to which the citizens of a foreign nation have the right effectively to control." 43 U.S.C. § 1356(c)(2). Also exempt are vessels for which "there are not a sufficient number of citizens of the United States, or aliens lawfully admitted to the United States for permanent residence, qualified and available for [a particular type of] work." 43 U.S.C. § 1356(c)(1)(B). Upon request, the Coast Guard determines whether these statutory standards are met and whether to issue an exemption to the manning requirements. *See* 33 C.F.R. §§ 141.5, 141.20.

Other circuits have held that compliance with the OCSLA's manning requirements precludes liability under the general rules of the INA. *See United*

---

[2] In discussing the validity of the Service Defendants' OCSLA exemptions, we do not imply that violating the OCSLA manning requirements is, itself, racketeering activity under RICO. *See* 18 U.S.C. § 1961(1)(F). We address the validity of the exemptions as an alternative basis for summary judgment because compliance with the manning requirements means freedom from RICO liability in this case.

Neither do we imply that all Service Defendants possessed exemptions at all times. At least some of the Service Defendants rely exclusively on their free-floating status for certain periods of their conduct.

No.  10-40936

*Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus., AFL-CIO v. Reno*, 73 F.3d 1134, 1140-41 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 807 (1996); *Piledrivers' Local Union No. 2375 v. Smith*, 695 F.2d 390, 393-94 (9th Cir. 1982).  The plaintiffs do not seriously contest this legal principle, but instead contest whether the Service Defendants' exemptions are valid.  We turn now to that question.

Defendants Cal Dive International, Inc. (Cal Dive) and Helix Energy Solutions, Inc. (Helix) possess these "foreign control exemptions."  *See* 43 U.S.C. § 1356(c)(2); 33 C.F.R. § 141.5.  The plaintiffs contend that Cal Dive and Helix deceived the Coast Guard in obtaining these exemptions by bareboat-chartering their vessels to a sham foreign company, which then time-chartered the vessels back.[3]  According to the plaintiffs, the sham company is closely connected with Cal Dive and Helix: it has no employees, its board of directors includes the President of Cal Dive, 49% of its shares are owned by Cal Dive and Helix, no money passes through it, and the masters and captains of its vessels report to Cal Dive and Helix.  Because these facts indicate that Cal Dive and Helix's vessels are not under actual foreign control, the plaintiffs argue, any exemption based on foreign control must have been fraudulently obtained.

---

[3]

> The demise or 'bareboat' charter is essentially the lease of a ship, usually on a long-term contract, often associated with a special finance or purchase arrangement. In a demise charter, it is up to the charterer to man and equip the vessel. . . . Although the owner retains legal title, the charterer is considered the temporary owner, or commonly termed the owner *pro hac vice*.

2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 11-3 (4th ed. 2004).

> The time charter party is a contract of affreightment to use a ship in order to ship goods for a specific period of time. The carrier makes the ship's capacity available to the time charterer for this purpose.

*Id.* § 11-5.

No.  10-40936

We are loath to second-guess the Coast Guard's judgment in issuing foreign control exemptions, especially in the light of the deference we owe to agency determinations made pursuant to statutory authority.  The plaintiffs ask us to take an extraordinary step in invalidating the exemptions.  They do not, however, point us to any deceptive conduct by Cal Dive and Helix that would compel us to take that step.  "[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The plaintiffs argue that the Coast Guard was deceived because it did not know that the company bareboat chartering Cal Dive and Helix's vessels would be time chartering them back to Cal Dive and Helix.  The plaintiffs make no showing to that effect, and the record evidence suggests the opposite: agents of Cal Dive and Helix stated in affidavits and depositions that they communicated the full scheme of bareboat chartering and time chartering during the exemption application process; the applications for the exemptions stated that the vessels would be performing work for Cal Dive and other companies; and the bareboat charter agreements expressly allow for further chartering.  Cal Dive and Helix submitted records to the Coast Guard revealing their relationship with the foreign company, the company's financial and organizational structure, and the company's ownership. In the light of this record evidence, we hold that the plaintiffs' showing is insufficient to invalidate the Coast Guard's determination to issue foreign control exemptions to Cal Dive and Helix.

The rest of the Service Defendants possess exemptions of the other variety, available when there are too few U.S. citizens and legal residents to perform a particular type of work.  43 U.S.C. § 1356(c)(1)(B); 33 C.F.R. §§ 141.15, 141.20.  The plaintiffs offer no evidence to contest the validity of these exemptions.

8

No. 10-40936

Instead, the plaintiffs offer evidence that some of the Service Defendants, at one time, operated without exemptions. We fail to see how this historical fact has any bearing on the validity of the exemptions the Service Defendants now possess.

The plaintiffs also argue that the validity of the OCSLA exemptions, generally, was not an appropriate topic for threshold discovery, and that they should have been given more time to develop evidence of their invalidity. We review the district court's management of discovery for abuse of discretion. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (5th Cir. 1990). The plaintiffs' assertion, standing alone, that the validity of the exemptions was not an appropriate subject for threshold discovery, does not persuade us that the district court abused its discretion.

B.

We turn now to the dismissal of the plaintiffs' OCSLA damages claim. The plaintiffs contend that the OCSLA creates a private right of action for damages. *See* 43 U.S.C. § 1349(b)(2). They point to the OCSLA's jurisdiction and venue provision, which states that, "[a]ny resident of the United States who is injured in any manner through the failure of any operator to comply with any rule, regulation, order, or permit issued pursuant to this subchapter may bring an action for damages . . . only in the judicial district having jurisdiction under paragraph (1) of this subsection." *Id.*

We have acknowledged previously that there is "language in § 1349(b) which taken alone might be read broadly enough to support [the] position that [the OCSLA creates] a new cause of action in tort." *Wentz v. Kerr-McGee Corp.*, 784 F.2d 699, 701 (5th Cir. 1986). At the same time we have rejected that broad reading, preferring instead to read § 1349(b) as a jurisdiction and venue provision only. *Romero v. Mobil Exploration & Producing N. Am., Inc.*, 939 F.2d 307, 309 n.5 (5th Cir. 1991) ("Private citizens are statutorily empowered to

9

commence civil actions to compel compliance with the Lands Act, 43 U.S.C. § 1349, but no cause of action *ex delicto* is founded on that provision."); *Wentz*, 784 F.2d at 701 ("The only new private right of action created by § 1349 is contained in § 1349(a). This provision permits a private citizen to bring suit to enforce the OCSLA . . . ."). This court's preference is based, in part, on Congress's stated intent in enacting § 1349(b) merely to reenact an earlier jurisdiction and venue provision, one which did not contain any language that might be construed as creating a private right of action for damages. *Wentz*, 784 F.2d at 701.

The plaintiffs seek to limit this precedent, which is plainly contrary to their argument that § 1349(b) creates a private right of action for damages, to cases of personal injury. We see no principled reason for doing so. Whether a plaintiff seeks to recover for economic losses, as here, or for personal injury has no bearing on how we read § 1349(b) in relation to the rest of the OCSLA. We hold that the plaintiffs cannot state a claim for a private right of action for damages under the OCSLA, and the district court's dismissal was proper.

## C.

### 1.

Lastly, we must consider the district court's disposition of the joint motion to dismiss and, in the alternative, joint motion for summary judgment on the OCSLA enforcement claim. The plaintiffs contend that the district court erred in disposing of their OCSLA enforcement action based on their failure to give proper pre-suit notice to the defendants. A person may not bring an OCSLA enforcement action "prior to sixty days after the plaintiff has given notice of the alleged violation, in writing under oath, to the Secretary and any other appropriate Federal Official, to the State in which violation . . . occurred . . . and to any alleged violator." 43 U.S.C. § 1349(a)(2). The sixty-day notice requirement is subject to an exception: "An action may be brought . . . immediately after notification of the alleged violation in any case in which the

. . . violation . . . would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3).

The plaintiffs argue that their rights are immediately affected by the defendants' conduct. They also argue that some plaintiffs joined the lawsuit more than sixty days after two plaintiffs, Danny Cunningham and Pablo Rubio Llamas, notified the defendants of the suit, although neither of the two notifying plaintiffs is still a party. Because the defendants' rights are not prejudiced by this method of notice, the plaintiffs argue that the district court should not have dismissed their claim for their failure strictly to comply with the statute's notice requirement.

Questions of prejudice and fairness notwithstanding, no plaintiff gave the required notice before bringing this action. Under either form of notice allowed by the OCSLA, the notice must be given before, not after, bringing an action. 43 U.S.C. § 1349(a). First, the plaintiffs rely on the letter of Danny Cunningham, dated January 18, 2005. The original complaint, in which Danny Cunningham is a named plaintiff, was filed on December 17, 2004, more than a month earlier. Even if we were to accept the plaintiffs' argument that one person's notice can serve as notice for all, Danny Cunningham did not give notice, as that word is contemplated in the OCSLA, because his attempted notice was untimely.

Second, the plaintiffs rely on the letter of Pablo Rubio Llamas, dated August 4, 2005. This letter is dated more than seven months after the action commenced, and only one day before the plaintiffs' Third Amended Complaint was filed. The Third Amended Complaint is the first pleading listing Pablo Rubio Llamas as a party. Assuming Llamas "brought" an action by joining a pending lawsuit, and assuming further that the date on the letter is the date notice was "given," as the terms "brought" and "given" are used in the OCSLA, then Llamas gave notice before bringing an action. Despite the generous aid of these assumptions, Llamas's notice is still deficient  because he gave it only one

11

No.  10-40936

day before becoming a plaintiff.  A person can bring an OCSLA enforcement action in fewer than sixty days after giving notice only if "the . . . [alleged] violation . . . would immediately affect a legal interest of the plaintiff."  43 U.S.C. § 1349(a)(3).  Llamas cannot claim this immediacy exception because the only pleading on which Llamas was a party, the Third Amended Complaint, states that Llamas "was previously employed by Offshore Speciality Fabricators, Inc. and/or Offshore Express, Inc."  It contains no allegations that Llamas presently works on the Outer Continental Shelf or has  plans to seek employment there. The harm for which Llamas sought remedy was past harm, not harm stemming from a violation immediately affecting his legal interests.  *See id.*  Pablo Rubio Llamas's attempted notice was, like that of Danny Cunningham, untimely.

It bears mentioning again that neither Danny Cunningham nor Pablo Rubio Llamas is still a party to this lawsuit, and that the plaintiffs point to no other person who even attempted to comply with the OCSLA's pre-suit notice requirement.  We cannot agree that deficient attempts at notice given by two former plaintiffs, neither attempt occurring before the original complaint was filed, can anchor all of the plaintiffs' claims.  Because no plaintiff gave the type of notice required by the OCSLA, we need not reach the plaintiffs' argument that notice by one plaintiff can serve as notice for all.

We further note that the plaintiffs' general approach to the OCSLA's pre-suit notice requirement is contrary to the Supreme Court's direction to strictly construe such statutory requirements.  *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 30-33 (1989).  Pre-suit notice requirements serve goals that judicially-crafted exceptions may disrupt: (1) allowing government agencies to take responsibility for enforcing regulations; and (2) giving the alleged violator an opportunity to bring itself into compliance.  *Id.* at 29.  These goals are no less important in multiparty litigation.

No. 10-40936

2.

The plaintiffs also urge that, contrary to the district court's holding, they have standing to bring an OCSLA enforcement action. The district court did not clarify whether its dismissal for lack of standing was a dismissal for lack of statutory standing only or whether it believed the plaintiffs also lacked constitutional standing. In the interest of clarity, we will consider the plaintiffs' standing under the statutory and constitutional standards.

The OCSLA provides that, "any person having a valid legal interest which is or may be adversely affected may commence a civil action . . . to compel compliance with this subchapter . . . ." 43 U.S.C. § 1349(a)(1). The plaintiffs contend that, by alleging that the defendants violate the OCSLA on a continuing basis and by seeking injunctive relief, they satisfy this requirement.

A prospectively-worded citizen suit provision, like the OCSLA's, requires that "the harm sought to be addressed . . . lie[] in the present or the future, not in the past." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987). We agree that a plaintiff may establish standing with "a good faith allegation of continuous or intermittent violation," but this does not free the plaintiff from asserting an interest affected by that continuous violation. *Id.* at 64. Only one plaintiff alleges current employment on the Outer Continental Shelf.[4] The other plaintiffs allege past employment but no plans to seek future employment there. The harm of which they complain—depressed wages and degraded working conditions—can only mean past harm because they do not presently earn wages or experience the working conditions on the Outer Continental Shelf. Because they cannot demonstrate a cognizable injury

---

[4] The district court held that the plaintiff alleging current employment had standing, but that his OCSLA enforcement claim still failed because all of the plaintiffs had failed to give pre-suit notice. We agree.

No.  10-40936

required to bring a citizen suit under the OCSLA, the plaintiffs lack statutory standing.

Constitutional standing is a jurisdictional question.  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.  2011) .  Our review of a dismissal for lack of subject matter jurisdiction is de novo.  *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010).  Article III of the Constitution limits the judicial power of the United States to justiciable cases and controversies.  *Lujan v.  Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  To establish constitutional standing, a plaintiff must satisfy three elements:

> First, the plaintiff must have suffered an 'injury in fact'. . . an invasion of a legally protected interest which is . . . concrete and particularized . . . not 'conjectural' or 'hypothetical' . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Id.* at 560-61 (internal citation omitted).  The plaintiffs' complaint fails the third element, redressability.  Enjoining the defendants' conduct, as the plaintiffs request, will not redress the wages they already lost or the working conditions they already endured.  The plaintiffs thus lack constitutional standing, and the district court's dismissal was proper.

### III.

In sum, we hold that the district court did not err in disposing of the plaintiffs' RICO claim, OCSLA damages claim, or OCSLA enforcement claim. Accordingly, the judgment of the district court is in all respects

AFFIRMED

14