# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2025

Lyle W. Cayce
Clerk

No. 24-50750

Enrique Villegas Sarabia,

*Plaintiff—Appellant*,

*versus*

Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Kika Scott, *Senior Official Performing the Duties of the Director, USCIS*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-964

Before Wiener, Douglas, and Ramirez, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

In 2013, Plaintiff-Appellant Enrique Villegas Sarabia applied to the United States Citizenship & Immigration Services ("USCIS") for a certificate of citizenship. USCIS rejected his claim, and he appealed to the Administrative Appeals Office ("AAO"). The AAO dismissed his appeal and subsequently denied his timely motion to reconsider and reopen the appeal. Almost five years later, he filed this lawsuit pursuant to 8 U.S.C. § 1503(a) seeking a declaration that he is an American citizen. The district court dismissed his suit for lack of subject-matter jurisdiction, reasoning that

No. 24-50750

the statute of limitations had expired. But § 1503(a)'s procedural time bar is nonjurisdictional, and Villegas's suit was timely. We accordingly REVERSE the district court's judgment of dismissal and REMAND for further proceedings.

## I

## A

We begin with Villegas's relevant family history. Villegas's mother is a Mexican citizen. His father was born in Eagle Pass, Texas, in 1955, and lived in the United States for the first five years of his life. He then moved to Mexico in 1960, but returned to the United States in 1965, at which time he became a migrant farm worker. He has remained in the United States ever since. Villegas was born in Mexico in 1976, by which time his father had been present in the United States for a cumulative total of sixteen years, seven of which were after he turned fourteen. His parents were not married at the time of his birth. They subsequently married in Eagle Pass, Texas, in 1977.

The Immigration and Nationality Act allows individuals to apply to USCIS for a certificate of American citizenship. 8 U.S.C. §§ 1401, 1452. When determining whether to recognize citizenship, USCIS considers "the statute in effect at the time of the child's birth." *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013). Villegas, as an individual born abroad to a citizen father and noncitizen mother, falls within 8 U.S.C. § 1401(a)(7), which, in 1976, recognized the claimant's citizenship if the citizen father "was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years." 8 U.S.C. § 1401(a)(7) (1976).

Individuals who believe they meet these requirements can file an Application for Certification of Citizenship—Form N-600—with USCIS. 8 U.S.C. § 1452; 8 C.F.R. §§ 106.2(b)(7), 341.1. The claimant must establish

2

No. 24-50750

their citizenship by a preponderance of the evidence. 8 C.F.R. § 341.2(c). If they fail to do so, or if their application is otherwise denied, they may administratively appeal the determination within thirty days of service. 8 C.F.R. § 103.3(a)(2)(i).

Appeals are considered by the AAO.[1] If the AAO dismisses the appeal, or an administrative denial otherwise finalizes, the claimant can, pursuant to 8 U.S.C. § 1503(a), petition a federal district court for a declaration. That section provides:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

---

[1] Although some regulations refer to this entity as the "Administrative Appeals *Unit*," defined as "the appellate body which considers cases under the appellate jurisdiction of the Associate Commissioner, Examinations," 8 C.F.R. § 103.3(a)(1)(iv), the "Administrative Appeals *Office*" issued the opinion in this case. We follow that document, the parties' briefs, and the district court in referring to it as the "AAO."

No. 24-50750

8 U.S.C. § 1503(a).

B

Villegas complied with this framework and filed an application with USCIS in July 2012. In March 2013, USCIS requested evidence that his father was physically present in the United States for ten years prior to Villegas's birth. Villegas provided "his father's written statement, a statement from his paternal grandfather, his father's Texas state birth certificate, his [paternal uncle's] 1956 birth certificate showing his birth in Texas, his grandfather's 1963 registration for the selective service," and other evidence, such as affidavits from his mother and family friends, his father's social security earnings in the years preceding Villegas's birth, and photographs of his father in the United States prior to Villegas's birth. Nevertheless, the San Antonio Field Office denied his application on March 27, 2015, concluding that he did not submit adequate proof that his father was in the United States for the required time period.[2] USCIS did not interview Villegas's father, who was in prison at the time.

On April 28, 2015, Villegas timely appealed the decision to the AAO, arguing that the evidence demonstrated his father's physical presence in the United States. Nearly three years later, on February 22, 2018, the AAO dismissed his appeal, finding that he failed to demonstrate his father's physical presence for the statutorily required period. On April 2, 2018, Villegas filed a motion to reconsider and reopen the AAO's decision on the basis that his father had become available to interview, and attached a more detailed affidavit from his father. The AAO denied this motion on September 14, 2018. On August 4, 2023, almost five years after the denial of

---

[2] It also denied his petition because Villegas failed to demonstrate that his father was, in fact, his biological father. Villegas has since established paternity.

the motion, Villegas petitioned the United States District Court for the Western District of Texas for a declaration of his citizenship pursuant to 8 U.S.C. § 1503.

## C

The district court judge referred all pretrial matters to the magistrate judge, and the Government moved to dismiss for lack of subject-matter jurisdiction. The magistrate judge issued a report and recommendation ("R&R") finding that § 1503(a) waives sovereign immunity and specifically limits subject-matter jurisdiction to a five-year window, and that this court has previously held that § 1503(a)'s limitations period is jurisdictional. Nevertheless, the R&R compared § 1503(a)'s language to that of statutes in both Supreme Court cases and a recent Eleventh Circuit case before concluding that, because the reference to jurisdiction is in the same sentence as the procedural time bar, Congress intended for the limitation to be jurisdictional.

The R&R then determined that the AAO's dismissal of Villegas's appeal on February 22, 2018, started the time bar's clock, not the denial of the motion to reopen, based on its interpretation of our decision in *Gonzalez v. Limon*, 926 F.3d 186 (5th Cir. 2019). Since Villegas's complaint was not filed within five years of the dismissal of his appeal, the magistrate judge found the complaint untimely and recommended dismissal for want of jurisdiction.

Villegas objected, arguing that (1) 8 U.S.C. § 1503(a)'s time bar is not jurisdictional; (2) even if the time bar is jurisdictional, his complaint was timely; and (3) the evidence in his motion to reopen was qualitatively different from that in his appeal, and the time bar therefore should equitably toll. The district court "conducted an independent review of the entire

record," denied his objections, and dismissed the complaint without prejudice for lack of jurisdiction. Villegas timely appealed.

## II

We review a dismissal for lack of subject-matter jurisdiction de novo. *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 769 (5th Cir. 2011). We first consider whether the time bar in § 1503(a) is jurisdictional before turning to the timeliness of Villegas's suit.

### A

#### 1

Attaching the "jurisdictional" tag to a procedural time bar carries great weight. "When Congress enacts a jurisdictional requirement, it 'mark[s] the bounds' of a court's power: A litigant's failure to follow the rule 'deprives a court of all authority to hear a case.'" *Harrow v. Dep't of Defense*, 601 U.S. 480, 484 (2024) (alteration in original) (first quoting *Boechler v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022); and then quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015)). Therefore, "a court must enforce the rule even if no party has raised it. And a court must adhere to the rule 'even if equitable considerations would support' excusing its violation." *Id.* (quoting *Wong*, 575 U.S. at 409); *see also Boechler*, 596 U.S. at 203 ("Jurisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and, as relevant to this case, do not allow for equitable exceptions."). On the other hand, "nonjurisdictional rules govern how courts and litigants operate within those bounds" by "seek[ing] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)).

No. 24-50750

Over the past twenty years—and increasingly in the past five—the Supreme Court has revisited its approach to whether procedural time bars in statutes of limitations are jurisdictional.[3] Due to the "risk of disruption and waste that accompanies the jurisdictional label," courts should "not lightly apply it to procedures Congress enacted to keep things running smoothly and efficiently." *Wilkins v. United States*, 598 U.S. 152, 158 (2023). Instead, they should conduct a "clear statement" test, under which a time bar is jurisdictional only when "traditional tools of statutory construction . . . plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* (quoting *Wong*, 575 U.S. at 410). This approach "'leave[s] the ball in Congress'[s] court,' ensuring that courts impose harsh jurisdictional consequences only when Congress unmistakably has so instructed." *Santos-Zacaria*, 598 U.S. at 416–17 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006)); *accord Riley v. Bondi*, 145 S. Ct. 2190, 2201–02 (2025) ("[O]ur pattern of recent decisions shows that we will not categorize a provision as 'jurisdictional' unless the signal [from Congress] is exceedingly strong."). While "Congress need not 'incant magic words'" to impose jurisdictional consequences, *Boechler*, 596 U.S. at 203 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)), "[w]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." *Santos-Zacaria*, 598 U.S. at 416 (alteration in original) (quoting *Boechler*, 596 U.S. at 205).

---

[3] The Supreme Court issued another such opinion during the pendency of this appeal, finding that the 30-day time bar in 8 U.S.C. § 1252(b)(1) is not jurisdictional. *See Riley v. Bondi*, 145 S. Ct. 2190 (2025).

2

Our court has previously touched on whether § 1503(a)'s time bar is jurisdictional, but without conducting the Supreme Court's sanctioned analysis. In *Gonzalez*, the claimant, Margarita Gonzalez, filed a motion to reconsider the cancellation of her certificate of citizenship in 2008. 926 F.3d at 187. USCIS denied her motion. *Id.* Then, in 2014, she filed a motion to reopen. *Id.* In 2016, USCIS denied this motion, too. *Id.* She then filed a § 1503(a) petition. *Id.* at 187–88.

The Government moved to dismiss for lack of subject-matter jurisdiction, "arguing the suit was barred by Section 1503(a)'s limitations provision because Gonzalez failed to bring her claim within five years of the 2008 Denial—the 2016 Denial did not restart the limitations clock." *Id.* at 188. The district court granted the motion and dismissed Gonzalez's suit for lack of subject-matter jurisdiction. *Id.* Gonzalez appealed.

On appeal, we considered whether a subsequent administrative denial restarts the time bar's clock. But we off-handedly referenced § 1503(a)'s "further jurisdictional requirements," including that a suit "may be instituted only within five years after the final administrative denial of such right or privilege." *Id.* (quoting 8 U.S.C. § 1503(a)). We also noted that "a plaintiff must exhaust administrative remedies." *Id.* at 188 n.7. We ultimately held that the phrase "final administrative denial" refers to the "first final administrative denial," and dismissed for want of jurisdiction. *Id.* at 190. Later panels have since cited this interpretation. *E.g.*, *Flores v. Hartnett*, No. 21-50139, 2022 WL 101978, at *3 (5th Cir. Jan. 10, 2022) (per curiam) ("We stated that 'an action brought under Section 1503(a) must comply with . . . jurisdictional requirements,' including the five-year statute of limitations period that begins to run after a final administrative denial as well as the exhaustion of administrative remedies." (alteration in original)

(quoting *Gonzalez*, 926 F.3d at 188)); *Cambranis v. Blinken*, 994 F.3d 457, 463 (5th Cir. 2021) ("But the person must bring the [§ 1503(a)] action 'within five years after the final administrative denial of such right or privilege,' otherwise the district court lacks subject-matter jurisdiction to hear the claim." (citation omitted) (quoting 8 U.S.C. § 1503(a)) (citing *Gonzalez*, 926 F.3d at 188)).

Consequently, the Government hangs its hat on a "'long line' of cases from the Fifth Circuit that have repeatedly interpretated the limitations [*sic*] as jurisdictional." In addition to the above cases, it cites *Flores v. Pompeo*, 936 F.3d 273 (5th Cir. 2019), in which we concluded that § 1503(a)'s residence requirement is jurisdictional. *Id.* at 276 n.2. We explicitly confined our holding and analysis to "the residence requirement." *Id.* But that holding does not turn the entire provision jurisdictional.[4]

Moreover, our statement in *Gonzalez* regarding the time bar was dictum. "A statement is dictum if it 'could have been deleted without seriously impairing the analytical foundations of the holding' and 'being peripheral, may not have received the full and careful consideration of the court that uttered it.'" *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)); *see also Obiter dictum*, *Black's Law Dictionary* (12th ed. 2024) (defining dictum as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential"). "A statement is not dictum if it is necessary to the result

---

[4] Although *Flores* premised its conclusion on the fact that the jurisdictional clause is appended to the remainder of the provision, it did not otherwise conduct a true "clear statement" test as we do below. *See* 936 F.3d at 276 n.2. We therefore decline to adopt that same reasoning here. Nevertheless, the *Flores* panel correctly concluded that the residency requirement is jurisdictional. *See infra* note 8 and accompanying text.

or constitutes an explication of the governing rules of law." *Bray*, 372 F.3d at 721. In *Gonzalez*, we focused on the meaning of "the final administrative denial." 926 F.3d at 188–90. We merely *assumed*, without holding, that the time bar itself was jurisdictional. *See id.* We did not give the issue "the full and careful consideration of the court." *Bray*, 372 F.3d at 721 (quoting *Gochicoa*, 238 F.3d at 286 n.11).[5] Nor did we conduct a clear statement test in either *Hartnett* or *Cambranis* when citing back to *Gonzalez*. This renders our statement of jurisdiction dictum, and it is therefore nonbinding. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015) ("While '[i]t is well-established in this circuit that one panel of this Court may not overrule another,' that rule does not apply to dicta." (alteration in original) (quoting *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014))).

Even if we were to strike new ground on our treatment of dicta and view the jurisdictional nature of the time bar as necessary to the court's ultimate disposition (because it dismissed for want of jurisdiction), the *Gonzalez* opinion's lack of analysis on this matter renders it non-precedential. "If a decision simply states that 'the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established,' it is understood as a 'drive-by jurisdictional rulin[g]' that receives 'no precedential effect.'" *Wilkins*, 598 U.S. at 160 (alteration in original) (quoting *Arbaugh*, 546 U.S. at 511). Drive-by jurisdictional rulings "contain[] no discussion of whether the provision was '"technically jurisdictional"'" or what in the case would have 'turn[ed] on that characterization.'" *Id.* (second alteration in original) (quoting *Arbaugh*, 546 U.S. at 512). Instead, "[t]here is nothing more than an 'unrefined dispositio[n]' stating that a 'threshold fact' must 'b[e] established' for there to be 'jurisdiction.'" *Id.* (first

_____

[5] Indeed, the parties' briefs in *Gonzalez* assumed that the time bar was jurisdictional without further discussion.

alteration added) (quoting *Arbaugh*, 546 U.S. at 511); *accord Riley*, 145 S. Ct. at 2202 (describing drive-by jurisdictional statements as "loosely stat[ing] that 'jurisdictio[n]' was lacking without considering whether the defect really concerned a limitation on the court's capacity to decide as opposed to a threshold requirement that a party had to satisfy in order to go forward" (second alteration in original) (quoting *Arbaugh*, 546 U.S. at 511)). Such is the case in *Gonzalez*, which conducted no analysis of the statute's jurisdictional nature, especially as it related to the time bar.[6] We decline to attribute precedential value to this assumption of jurisdictional consequence.[7]

We therefore analyze § 1503(a)'s procedural time bar under the clear statement test.

---

[6] This is not the first time that a court improperly attributed the "jurisdictional" tag to a statutory provision. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) ("While perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice. Courts—including this Court—have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis."); *Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004) ("Courts, including this Court, it is true, have been less than meticulous . . . ; they have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions in rules of court. . . . 'Classifying time prescriptions, even rigid ones, under the heading "subject matter jurisdiction"' can be confounding. Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." (citation modified) (citations omitted) (quoting *Carlisle v. United States*, 517 U.S. 416, 434 (1996))).

[7] We have previously recognized the doctrine of drive-by jurisdictional rulings, albeit in a slightly different context. *See USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 283 (5th Cir. 2011).

No. 24-50750

3

The clear statement test, by its very name, requires us to scrutinize the statutory text. While the entire provision is important, the time bar itself falls within the final sentence:

> An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a). The provision has no immediately clear jurisdictional reading. In other words, it does not explicitly divest a court of jurisdiction where the filing is made outside of the five-year filing requirement. Accordingly, a more robust statutory analysis is required. We address the district court's reliance on waiver of sovereign immunity before conducting a clear statement test and discussing the Government's counterarguments.

i

The R&R concluded that § 1503(a) waives sovereign immunity by "specifically creat[ing] a cause of action for declaratory relief for persons within the United States asserting a right or privilege of citizenship against the heads of any federal agency denying said right or privilege." That is correct. But it then stated: "Although § 1503(a) specifically confers subject matter jurisdiction upon the courts, it specifically limits that jurisdiction to a five-year window . . . . Because § 1503(a) acts as a condition limiting the Government's waiver of sovereign immunity, it is jurisdictional in nature." This contravenes Supreme Court precedent.

In *Wilkins v. United States*, the Court considered whether the Quiet Title Act's twelve-year statute of limitations period is jurisdictional. 598

12

No. 24-50750

U.S. at 155. After concluding that Congress did not clearly imbue the time bar with jurisdictional consequences, the majority addressed an argument urged by both the Government and the dissent: that "conditions on waivers of [sovereign] immunity [are] subject-matter jurisdictional." *Id.* at 161. The majority disagreed. "If associating time limits with waivers of sovereign immunity clearly made those limits jurisdictional, equitable exceptions would be just as clearly foreclosed." *Id.* Instead, "'the terms of the United States' waiver of sovereign immunity define the extent of the court's jurisdiction' and . . . '"a statute of limitations constitutes a condition on the waiver."'" *Id.* at 162–63 (citation modified) (quoting *United States v. Mottaz*, 476 U.S. 834, 841 (1986)); *accord Santos-Zacaria*, 598 U.S. at 416 (noting that "nonjurisdictional rules govern how courts and litigants operate within [the] bounds" of a court's adjudicatory authority). We therefore do not attribute any weight to the statute's waiver of sovereign immunity.

ii

The question remains: What does the statute really say? The sentence containing the term "jurisdiction" establishes (1) a five-year time bar after final administrative denial; (2) venue in the district of the petitioner's residence; and (3) jurisdiction over "such officials" in specific courts. 8 U.S.C. § 1503(a). The jurisdictional clause is set off and refers back to other phrases throughout the provision: jurisdiction is conferred upon "those courts" over "such officials" in "such cases." *Id.* Which courts? "[T]he district court of the United States for the district in which such person resides or claims a residence." [8] *Id.* Which officials? We look back to the first sentence: "the head of [any department or independent agency]" that denied

_____

[8] The clear statement test thus reinforces our determination in *Flores* that the residency requirement is jurisdictional. *See* 936 F.3d at 276 n.2.

the petitioner a claimed "right or privilege as a national of the United States." *Id.* Which cases? Those filed by the claimant against the head of the department or agency. *See id.* No aspect of the jurisdictional clause clearly refers back to the five-year time bar. That does not amount to a clear statement that the time bar itself is jurisdictional. *See Riley*, 145 S. Ct. at 2202 ("[The time bar] tells [*claimants*] what they must do if they want judicial review, but it provides no directives to *courts*." (emphasis in original)).

While this approach may seem unduly reductive, we find support in the Supreme Court's opinion in *Boechler*. There, the Court considered a provision of the Tax Code that reads as follows: "The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)." *Boechler*, 596 U.S. at 204 (quoting I.R.C. § 6330(d)(1)). The Court, deciding whether the provision imbued jurisdictional consequences upon the time bar, stated that "[t]he answer depends on the meaning of 'such matter,' the phrase marking the bounds of the Tax Court's jurisdiction." *Id.* To determine the meaning of that phrase, it invoked the "clear antecedent" rule, searching for a noun or noun phrase that would clearly attach to the reference. *Id.* While the statute in *Boechler* had no clear antecedent, § 1503(a) has clear antecedents for each of "such officials," "those courts," and "such cases." But none of those terms reasonably or clearly refers back to the time bar.

It matters not "that the jurisdictional grant and filing deadline appear in the same provision, even the same sentence." *Id.* at 206. Indeed, "[a] requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions.'" *Id.* at 206–07 (quoting *Sebelius*, 568 U.S. at 155). This would not be the first time a court "parsed a single statutory sentence to distinguish between its jurisdictional and nonjurisdictional elements." *Id.* at 207. Nor is it relevant that the

language defining the procedural requirement is rigid or harsh. *See Harrow*, 601 U.S. at 483 (noting that, while procedural requirements typically "read as categorical commands (*e.g.*, a person 'shall file in this court,' 'shall file by that time,' 'shall include the following documents')[,] . . . Congress legislates against the backdrop of judicial doctrines creating exceptions, and typically expects those doctrines to apply"). The precedent is clear: rather than focus on proximity of the jurisdictional clause or rigidity of the procedural time bar, we must search for "a clear tie between the deadline and the jurisdictional grant." *Boechler*, 596 U.S. at 207. This clear tie is plainly missing in § 1503(a).

*Boechler* also provided an example of a statute where the jurisdictional element *is* clear: "[T]he Tax Court shall have no jurisdiction under this paragraph to enjoin any action or proceeding unless a timely appeal has been filed under subsection (d)(1)." *Id.* (quoting I.R.C. § 6330(e)(1)). That "clear statement" can only be read one way. Such is not the case with § 1503(a). At best, if there is another reasonable interpretation supporting the "jurisdictional" reading, it is one of multiple. *See Santos-Zacaria*, 598 U.S. at 416 ("[W]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." (quoting *Boechler*, 596 U.S. at 205)).

iii

The Government insists that *Boechler* is distinguishable. It argues that the Supreme Court "noted that when a 'long line' of decisions 'left undisturbed by Congress' has treated similar requirements as jurisdictional, . . . the Supreme Court presumes that Congress intended to follow that course. No such 'long line' of authority exist[ed] regarding" the statute at issue in *Boechler*. Moreover, the Government claims that the ambiguous phrases in § 1503(a) "have an obvious antecedent"—those described

above—and that the terms are clearer and reasonably defined in the same subsection. None of these arguments turns *Boechler* distinguishable.

As the Government concedes, *Boechler* is "difficult at first glance to reconcile with [the Government's] arguments." So, in an effort to distinguish the case, it claims that "the analysis remains very much statute specific." While we agree that the issue is certainly "statute specific"—it must be, as a matter of statutory interpretation—the Supreme Court's approach in *Boechler* is highly applicable, especially given the similar nature of a proximate reference to jurisdiction without an explicit link to the time bar. And, although the Fifth Circuit's line of cases may have considered various phrases in this statutory provision, none of them performed a true clear statement analysis, especially regarding the time bar. Further, our line of cases differs greatly from the "long line" contemplated by the Supreme Court. *See Riley*, 145 S. Ct. at 2202–03 (considering *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), which relied on "decisions going back *more than a century*" that "had held that the provision in question and its predecessors were truly jurisdictional" (emphasis added)). These arguments fail.

The Government also cites *Sloan v. Drummond Co.*, 102 F.4th 1169 (11th Cir. 2024), in which the Eleventh Circuit court considered whether the time bar in 33 U.S.C. § 921(c) is jurisdictional. That statute reads, in pertinent part:

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. . . . Upon such filing, the court shall have jurisdiction of the proceeding . . . .

33 U.S.C. § 921(c). The court identified three factors to consider when conducting such an analysis: "the text, the statutory context, and the degree of flexibility afforded to potential claimants." *Sloan*, 102 F.4th at 1174–75. Specifically, it looked for references to jurisdiction, whether the language was in the jurisdictional section of the statute, and whether the scheme was designed to be strict on litigants. *Id.* at 1175.

As an initial matter, this tripartite test contradicts Supreme Court case law, and we therefore reject it. *Boechler* concluded that "[a] requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions.'" 596 U.S. at 206–07 (quoting *Sebelius*, 568 U.S. at 155). Moreover, if the Supreme Court's recent run of opinions tells us anything, it is that we do not consider whether a statute of limitations "places strict requirements on [claimants]." *Sloan*, 102 F.4th at 1175. Regardless of how categorical a demand the time bar is, "Congress legislates against the backdrop of judicial doctrines creating exceptions, and typically expects those doctrines to apply." *Harrow*, 601 U.S. at 483. We only focus on whether the statutory language clearly imbues jurisdictional consequences to the time bar. *See, e.g.*, *Wong*, 575 U.S. at 409–10; *Boechler*, 596 U.S. at 203–04; *Harrow*, 601 U.S. at 483–84; *Santos-Zacaria*, 598 U.S. at 417–18; *Wilkins*, 598 U.S. at 157–58; *Riley*, 145 S. Ct. at 2201–02.

Regardless of this test's incompatibility with Supreme Court doctrine, a brief analysis shows that the statute in *Sloan* is readily distinguishable. 33 U.S.C. § 921(c) notes that "the court shall have jurisdiction of the proceeding" only "[u]pon such filing." What filing? The clear antecedent rule brings us back to the only other reference: "filing in such court within sixty days following the issuance" of the Board's order. *Id.* Whether that is a "clear statement" may be for reasonable minds to debate, and we take no stance on that matter. But it is more likely that Congress intended for

jurisdictional limitations to apply in the *Sloan* statute than to § 1503(a). As the Government itself noted, "the analysis [is] very much statute specific." *Sloan* does not compel a different conclusion.

* * *

8 U.S.C. § 1503(a) does not clearly tie its jurisdictional provision to its procedural time bar. The time bar is therefore a nonjurisdictional claims-processing rule, and we proceed to Villegas's specific facts to determine whether he timely filed his petition.

B

Villegas argues that he timely filed his lawsuit under § 1503(a), which demands that a claimant file their lawsuit "within five years after the final administrative denial of such right or privilege." 8 U.S.C. § 1503(a). We previously considered the "final administrative denial" language in *Gonzalez*: "While the text is silent regarding duplicative denials, in defining a limitations period, Congress expressed its interest in finality. Implicitly authorizing a series of duplicative claims would frustrate that interest. Section 1503(a)'s reference to 'the final administrative denial' means the first final administrative denial." 926 F.3d at 190. In other words, Gonzalez's suit could not advance because she filed the action in response to the AAO's *second* administrative denial of the same claim. Although her motion to reconsider was denied in 2008, she did not file suit until 2017, after her second, untimely motion to reopen was denied. *Id.* at 187–88. The statute of limitations began after the 2008 denial. *See id.* Therefore, we ask which denial constituted the *first* final administrative denial: the dismissal of the appeal, or the timely denial of the motion to reopen?

The Government reads *Gonzalez* narrowly, arguing that, since "the AAO decision is sufficiently final to trigger § 1503(a) jurisdiction, . . . it is necessarily the 'first final administrative denial' under § 1503(a)." This

reading is overly restrictive.  True enough, the regulatory scheme shows that an AAO denial of an appeal is, on its own, sufficient to file a suit under § 1503(a).  After all, the statute "does not require noncitizens to give the agency an opportunity to consider an objection *using every mechanism available*," *Santos-Zacaria*, 598 U.S. at 429 (emphasis in original), so the denial of an appeal is sufficient for administrative exhaustion.  But the regulatory scheme also provides for motions to reopen and to reconsider that continue the proceedings.

8 C.F.R. § 341.5, entitled "Decision," requires that applicants be furnished with reasons for denial and advised of their right to appeal.  8 C.F.R. § 341.5(d).  The claimant then has thirty days to file such an appeal.  8 C.F.R. § 103.3(a)(2)(i).[9]  Once a decision is issued, the applicant has thirty days to file a motion to reconsider or reopen.  8 C.F.R. § 103.5(a)(1)(i).  8 C.F.R. § 103.5 describes such motions.  "A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence."  8 C.F.R. § 103.5(a)(2).  The applicant must also provide, alongside the motion, "a statement about whether or not the validity of the unfavorable decision has been or is the subject of any judicial proceeding and, if so, the court, nature, date, and status or result of the proceeding."  8 C.F.R. § 103.5(a)(1)(iii)(C).  In other words, the regulation contemplates instances in which an individual filed a § 1503(a) action directly following the denial of their appeal.  Therefore, relevant

---

[9] Untimely appeals shall be rejected, and a motion to reopen or to reconsider must then be filed.  8 C.F.R. § 341.5(e).

regulations consider the denial of an appeal by the AAO a final administrative denial.[10]

It is also true that "the limitations period [of § 1503(a)] is not reset 'by means of a follow-on denial.'" *Cambranis*, 994 F.3d at 463 (quoting *Gonzalez*, 926 F.3d at 189). But that statement, to which the Government clings, considered vastly different circumstances. In *Cambranis*, the claimant had filed six separate passport applications. *See id.* at 460. And in *Gonzalez*, the claimant filed her § 1503(a) suit not after the *first* administrative denial in 2008, but after the *second* in 2016. *See* 926 F.3d at 187–88. When we held in *Gonzalez* that § 1503(a) only permits suits following the first final administrative denial, we did not mean the very first time an appeal could possibly be filed. We sought to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial. As we have explained under similar circumstances:

> If [the Government's position] was our reality, it would be "immensely resource intensive" as numerous noncitizens would file premature petitions for review. For example, "[i]t would lead to an increase in filings, as petitioners would inevitably have to file a petition for review to preserve the possibility of judicial review, even when unsure if they would need to, or even choose to, challenge the decision in the future[,]" which in turn "would require our court to dedicate resources to tracking and closing moot or abandoned petitions" and "to establish a system of holding petitions for review in abeyance for years at a time."

---

[10] We have suggested as much, too. *See Rios-Valenzuela v. DHS*, 506 F.3d 393, 397 (5th Cir. 2007) ("If the [application for citizenship] is denied, [the applicant] can appeal to the [Administrative Appeals Unit ("AAU")] . . . . If the AAU affirms, the person can seek a judicial declaration of citizenship under 8 U.S.C. § 1503(a) . . . ." (footnote omitted)).

No. 24-50750

*Argueta-Hernandez v. Garland*, 87 F.4th 698, 706 n.5 (5th Cir. 2023) (quoting *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1053 (5th Cir. 2023)), *overruled on other grounds by Riley*, 145 S. Ct. 2190.[11]

Therefore, we interpret *Gonzalez* as focusing on the reasonable finality of a particular claim's proceedings, *not* searching for the first possible instance of finality. *See* 926 F.3d at 189 ("While, '[s]tanding alone, [the statute] might appear to indicate that any "final administrative denial," irrespective of whether another denial has occurred before it, counts,' such an approach would allow 'an individual . . . indefinitely [to] prolong the period . . . by continuing to file *applications*.'" (emphasis altered) (alterations

---

[11] While the Supreme Court recently discussed similar circumstances in *Riley*, this case is distinguishable. There, the Supreme Court considered whether a Board of Immigration Appeals ("BIA") order denying deferral of removal is a final order of removal under 8 U.S.C. § 1252(b)(1). *Riley*, 145 S. Ct. at 2197–98. That provision provides for direct judicial review by courts of appeals of final orders of removal. 8 U.S.C. § 1252. The Court thus endeavored to "identify which order concluded that Riley is 'deportable' and commanded his deportation." *Riley*, 145 S. Ct. at 2198. It concluded that the final administrative review order issued by the Department of Homeland Security ("DHS") controlled because it "held that Riley was deportable and directed that he be removed from the United States." *Id.* This, it said, was "the Executive's *final* determination on the question of removal," in accordance with 8 U.S.C. § 1101(a)(47)(B). *Id.* That regulatory scheme does not mirror that at issue here.

In so holding, the Court addressed "legitimate practical concerns," including that the petition to the relevant court of appeals may be complete by the time the BIA considers the desired relief of withholding. *Id.* at 2200. The majority stated that the Government, in such circumstances, could request that the court of appeals hold the matter in abeyance while the BIA expeditiously disposes of the withholding relief request. *Id.* But that suggestion stemmed from the Court's dedication to "follow[ing] the statutory text" and its prior precedents, both of which required that the filing be premised on DHS's order, not the BIA's. *Id.* We adopt the logical conclusion when permitted by the statute and our precedent: "One should not be required to appeal an order before it exists." *Id.* at 2206 (Sotomayor, J., dissenting in part). We therefore stand by our interpretation that the motion is attached to the overall proceedings and constitutes part of the first final administrative denial, as such a course of action is not foreclosed by precedent or statutory text.

in original) (footnote omitted) (quoting *Henry v. Quarantillo*, 684 F. Supp. 2d 298, 306–07 (E.D.N.Y. 2010))); *see also id.* at 187, 189 (referring to the dismissal of Gonzalez's 2008 motion to reconsider as "the 2008 Denial" and asking "whether Section 1503(a) permits Gonzalez to seek a declaration in connection with the 2016 Denial given USCIS's prior denial in 2008").

Villegas identifies three decision points from which an individual could institute the § 1503(a) action: (1) USCIS's initial denial of the Form N-600; (2) the AAO's denial of the appeal; and (3) the denial of the motion to reconsider or reopen. He correctly notes that USCIS's first denial, decision point one, cannot trigger a claim under § 1503(a), because a claimant must exhaust administrative remedies under *Rios-Valenzuela v. DHS*, 506 F.3d 393, 397 (5th Cir. 2007). He then acknowledges that an AAO dismissal is sufficient to initiate an action under § 1503(a). But he also claims that "the regulations provide for more procedure." As he sees it, the ultimate denial of the motion to reopen, should the applicant elect to file one, becomes the "last and 'final administrative denial' from the administrative process allowed by federal regulations," and should therefore become the first final administrative denial under *Gonzalez*.

We agree with Villegas that a motion to reconsider or reopen extends the time to file a § 1503(a) proceeding when *timely* filed. Individuals need not file a motion to reopen or reconsider. Indeed, many never do. And while a motion to reopen must be filed within thirty days of the decision that the motion seeks to reopen, "failure to file before this period expires[] may be excused in the discretion of the Service where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner." 8 C.F.R. § 103.5(a)(1)(i). Without limiting the rule to timely motions, the time bar's clock could be started well after the denial of the appeal, if USCIS excuses the delay. This could extend the clock into perpetuity, contravening *Gonzalez*'s statement that "Congress expressed its

interest in finality" in § 1503(a) and its holding that Gonzalez's 2016 motion to reopen was a second administrative denial. 926 F.3d at 190. We therefore hold that a denial of a timely motion to reconsider or motion to reopen may serve as the final administrative denial on a particular claim. If the motion is untimely, then the AAO decision is final. *Cf. id.* at 189–90 (concluding the 2008 denial of a motion to reconsider, without an appeal, a final administrative denial and the 2016 denial of a motion to reopen, with an appeal, a second final administrative denial of that same claim).

This approach comports with *Gonzalez*, which sought to prevent additional duplicative claims, denied by USCIS, from triggering jurisdiction under § 1503(a). Because the parties agree that the motion was timely filed, Villegas's suit was timely because he filed it within five years of the first final administrative denial of a claim.[12] Accordingly, we do not consider his argument that his motion to reopen is "qualitatively different" from his previous claim or whether that test, as described in *Villareal-Salinas v. Limon*, 549 F. Supp. 3d 624, 631 (S.D. Tex. 2021), comports with our precedent.

III

The clear statement test reveals that 8 U.S.C. § 1503(a)'s procedural time bar is nonjurisdictional. Moreover, our precedent blocks only untimely follow-on denials of the same applications, not timely filings affiliated with

---

[12] We pause to note that the record is unclear as to whether Villegas timely filed his motion to reopen. The AAO sent a letter informing him of his denial on February 22, 2018. But it sent another letter with identical information on March 1, 2018. He then filed his motion on March 30, 2018. A "[d]ay, when computing the period of time for taking any action provided in this chapter . . . including the taking of an appeal, shall include Saturdays, Sundays, and legal holidays," except that the period may not end on such a day. 8 C.F.R. § 1.2. Thirty-nine days elapsed between the dates he provided in his complaint: February 22, 2018, and April 2, 2018. Nevertheless, the Government concedes that Villegas "timely filed with the AAO a discretionary Motion to Reopen and Reconsider." We therefore accept that his filing is timely.

No. 24-50750

the same administrative proceeding.  Villegas filed his lawsuit within five years of the denial of his timely motion to reconsider or reopen.  We therefore REVERSE the district court's judgment dismissing the action for lack of subject-matter jurisdiction and REMAND for further proceedings.